Filed 1/25/19 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| McCORKLE EASTSIDE NEIGHBORHOOD GROUP et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF ST. HELENA et al., <br><br> Defendants and Respondents. | A153238 <br><br> (Napa County <br> Super. Ct. No. 17CV000205) <br><br> **ORDER MODIFYING OPINION;** <br> **[NO CHANGE IN JUDGMENT]** |

\*THE COURT:

It is ordered that the published opinion filed January 10, 2019, be modified as follows:

On page 2, the first sentence of the last paragraph (which begins with "Real party in interest. . . .") is modified to substitute the word "half" for "770," so that the sentence reads:

Real party in interest Joe McGrath purchased the half-acre lot at 632 McCorkle Avenue, an area within the City's HR district, intending to build multi-family dwellings on the property.

No change in judgment.

Date:_____          _____ P.J.


\*Before Jones P.J., and Needham, J.

1

Filed 12/18/18; Certified for Publication 1/10/19 (order attached) (unmodified opinion)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| McCORKLE EASTSIDE NEIGHBORHOOD GROUP et al., Plaintiffs and Appellants, v. CITY OF ST. HELENA et al., Defendants and Respondents. | A153238 (Napa County Super. Ct. No. 17CV000205) |

Appellants McCorkle Eastside Neighborhood Group and St. Helena Residents for an Equitable General Plan opposed the development of an eight-unit multifamily residential building at 632 McCorkle Avenue. They filed a lawsuit challenging the actions of respondents the City of St. Helena (City) and the City Council of St. Helena (City Council) in approving a resolution granting demolition and design review permits to property owner and real party in interest Joe McGrath. When the trial court denied their petition for peremptory and administrative writ of mandate (Code Civ. Proc., §§ 1085, 1094.5), appellants filed this appeal. Appellants contend (1) the City violated the California Environmental Quality Act (CEQA; Govt. Code, § 21000 et seq.) because the City Council failed to consider aspects of the project other than design review; and (2) the City abused its discretion under CEQA by approving the demolition permit and design review without requiring an environmental impact report (EIR) based on its determination that the proposed project met the requirements for a Class 32 (infill)

1

categorical exemption under 14 California Administrative Code section 15332 (CEQA Guidelines). We affirm.

## I. BACKGROUND

The planning and zoning law establishes the authority of most local governmental entities to regulate the use of land. (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 518–519, fn. 18.) "Zoning laws regulate land uses in two basic ways. Some uses are permitted as a matter of right if the uses conform to the zoning ordinance. Other sensitive land uses require discretionary administrative approval pursuant to criteria in the zoning ordinance. ([Govt. Code,] § 65901.) They require a conditional use permit." (*Neighborhood Action Group v. County of Calveras* (1984) 156 Cal.App.3d 1176, 1183.) A conditional use permit contemplates the review of individual applications using sound principles of zoning and planning and is discretionary by nature. (See *Breakzone Billiards v. City of Torrance* (2000) 81 Cal.App.4th 1205, 1224.)

In 2015, the City began the process for amending the housing element of its general plan to conform with state policies by committing to eliminate the conditional use permit requirement for multi-family dwellings within High Density Residential (HR) districts. In 2016, the City amended its zoning ordinance to comply with this commitment. Section 17.44.020(C) of the St. Helena Municipal Code makes "[m]ultiple-family dwellings, apartments and dwelling groups consistent with the density requirements of this chapter" a permitted use within the HR district. Section 17.44.030 provides a list of uses requiring use permits, and multi-family dwellings are not on that list. Design review is still required for multi-family residential units within an HR district under section 17.44.040.

Real party in interest Joe McGrath purchased the 770-acre lot at 632 McCorkle Avenue, an area within the City's HR district, intending to build multi-family dwellings on the property. The lot contained a dilapidated single-family home and its soil had been contaminated with lead by a prior occupant. McGrath committed to remediating this contamination with Napa County. He submitted an application for a demolition permit to demolish the existing structure as well as a design review plan for the proposed eight

2

units.  The application was deemed complete by the City's Planning Commission staff in October 2016, who prepared a report concluding (1) the proposed project fell within the Class 32 infill exemption of CEQA Guidelines section 15332 and was thus exempt from CEQA; and (2) the project met the criteria for design review.

The project came before the full Planning Commission in a hearing held on December 6, 2016.  It was opposed by several neighbors and by appellants, who argued the project should not be approved because: (1) the site of the proposed development was contaminated; (2) McCorkle Avenue contains no storm drains and routinely floods; (3) there is little public open space in the area and children are required to play in the street; (4) the space required for a firetruck turnaround was not adequate; (5) the proposed project was located in a historical district, and was not consistent with the design of four historical homes located across the street; and (6) the proposed project was next door to the pending multi-family Brenkle project, and the cumulative effects of those projects would be significant.[1]  The City Attorney advised the Planning Commission that because the St. Helena Municipal Code now did not require issuance of a use permit for multi-family dwellings in HR districts, the Commission was required to approve the project so long as it met the design review criteria.  Issues pertaining to use, such as parking, traffic, safety and soil remediation, were not to be considered.  The City Attorney indicated he was confident that a Class 32 exemption applied to the project under CEQA Guidelines section 15332, but that in any event CEQA would not apply to a nondiscretionary project such as this.

The Planning Commission approved the demolition and design review permits by a 2-1 vote in a resolution dated December 6, 2016.  It found the project was exempt from CEQA under CEQA Guidelines section 15332 and would not cause any significant environmental effects.  One commissioner who voted in favor of the project noted on the

---

[1]     Some of these arguments challenge the existing environment's effect on future users of the project.  Analysis was not required under CEQA for this purpose. (*California Bldg. Industry Assn. v. Bay Area Air Quality Management District* (2015) 62 Cal.4th 369, 386.)

record this was "a tough one," but she had voted to approve "based on what the restrictions of our discussion and our—our jurisdiction are, specific to design review."

Appellants appealed to the City Council.[2]  A hearing was held on January 24, 2017.  The City Attorney advised the City Council it was limited to "the design aspects of this project" and reiterated that a Class 32 exemption applied but if it did not, review was still limited due to there being no use permit required.

The City Council voted 3-2 to deny the appeal and approve the action of the Planning Commission.  It issued a resolution making findings in support of its approval for design review.  It additionally made findings in the resolution that the project was consistent with the general plan's goals of permitting infill development, encouraging a mix of housing types and prices, addressing workforce housing, encouraging higher density where appropriate, and allowing the conversion of single-family homes to multi-family housing.  The resolution addressed specifically the arguments that the project was not consistent with the general plan.

The resolution also found that a Class 32 infill exemption to CEQA applied and specifically found the proposed project would not "result in any significant effects relating to traffic, noise, air quality or water quality" within the meaning of CEQA Guidelines section 15332(d).  The resolution stated the CEQA exemption was consistent with the City's limited discretion to consider or address environmental impacts:  "Multi-family residential land uses are permitted by right in the HR District.  Thus, in the context of this design review approval, the Planning Commission's authority/discretion is limited to (design related) concerns stemming from the only discretionary actions required for project approval.  The City Council's discretion on appeal is similarly limited.  Section 17.164.010 of the Zoning Ordinance expressly restricts the Planning Commission's and City Council's discretion during design review to the general form, spatial relationships and appearances of the project's proposed design, and Section 17.164.040C expressly

---

[2]  Under sections 17.164.080 and 17.08.180(A) of the St. Helena Municipal Code, a land use application in the City of St. Helena is heard initially by the Planning Commission and is appealable to the City Council.

precludes the Planning Commission and City Council from disapproving a proposal for non-design related reasons. . . . [¶] Accordingly, the City's discretion, and thus scope of its CEQA review, is limited to design issues such as scale, orientation, bulk, mass, materials, and colors, and it has no authority or ability to meaningfully address non-design related issues or impacts by imposing conditions of approval or mitigation measures. . . . The Council takes quasi-adjudicative notice of case law that has determined that, in situations where an agency's discretion to deny or consider a particular activity is limited (such as the proposed residential land use at the project site) its approval decision is considered ministerial and CEQA does not apply or CEQA review is limited to the extent of the discretion." The City Council found that even if the project was not exempt from CEQA under the Class 32 infill exemption, "and some level of CEQA review thus were required, the City would nevertheless be allowed to undertake only limited review based on design-related environmental issues, not the use-related issues asserted by the appellants' argument. The Council finds that City staff has demonstrated that the project will not result in any significant impacts, whether design-related or otherwise, and the appellants have not provided any substantial evidence to the contrary."

Appellants filed a petition for writ of mandate and first amended petition for writ of mandate against the City and City Council, alleging violations of CEQA and local zoning laws. The City and City Council answered and, after briefs were filed, a hearing was held. The trial court denied the petition.

## II. DISCUSSION

### A. *Standard of Review*

We review an agency's determination that CEQA does not apply to a project for abuse of discretion. (Pub. Res. Code, §§ 21168 [quasi-adjudicative proceedings], 21168.5 [quasi-legislative decisions]; *Gentry v. City of Murrieta* (1995) 36 Cal.App.4th 1359, 1374–1375.) "Abuse of discretion is shown if (1) the agency has not proceeded in a manner required by law, or (2) the determination is not supported by substantial evidence." (*Gentry*, at p. 1375.) On appeal, our task is the same as the trial court's, and

5

we review the administrative record independently. (*Id.*, at pp. 1375–1376.) The legal determination of whether an approval is exempt from CEQA as a ministerial action is reviewed de novo. (*Friends of Juana Briones House v. City of Palo Alto* (2010) 190 Cal.App.4th 286, 303.) So is the interpretation of any local ordinance. (*Brookside Investments, Ltd. v. City of El Monte* (2016) 5 Cal.App.5th 540, 548, fn. 4.)

B. *General Principles*

" 'The basic purposes of CEQA are to: [¶] (1) Inform governmental decision makers and the public about the potential, significant environmental effects of proposed activities. [¶] (2) Identify ways that environmental damage can be avoided or significantly reduced. [¶] (3) Prevent significant, avoidable damage to the environment by requiring changes in projects through the use of alternatives or mitigation measures when the governmental agency finds the changes to be feasible. [¶] (4) Disclose to the public the reasons why a governmental agency approved the project in the manner the agency chose if significant environmental effects are involved.' ([CEQA Guidelines], § 15002)." (*Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 285–286 (*Tomlinson*).) CEQA is designed to compel government to make decisions with environmental consequences in mind. (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 393.)

"To achieve these goals, CEQA and the implementing regulations provide for a three-step process. In the first step, the public agency must determine whether the proposed development is a 'project,' that is, 'an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment' undertaken, supported, or approved by a public agency. ([Pub.Res.Code], § 21065.) [¶] The second step of the process is required if the proposed activity is a 'project.' The public agency must then decide whether it is exempt from compliance with CEQA under either a statutory exemption ([Pub.Res.Code], § 21080) or a categorical exemption set forth in the regulations ([Pub.Res.Code], § 21084, subd. (a); [CEQA Guidelines], § 15300). A categorically exempt project is not subject to CEQA, and no further environmental review is required. [Citations.] If the project is not

6

exempt, the agency must determine whether the project may have a significant effect on the environment.  If the agency decides the project will not have such an effect, it must 'adopt a negative declaration to that effect.' ( [Pub. Res. Code], § 21080, subd. (c); see [CEQA Guidelines], § 15070; [citation].)  Otherwise, the agency must proceed to the third step, which entails preparation of an [EIR] before approval of the project. ([Pub.Res.Code], §§ 21100, subd. (a), 21151, subd. (a).)"  (*Tomlinson*, *supra*, 54 Cal.4th at p. 286.)

CEQA applies only to "*discretionary* projects proposed to be carried out or approved by public agencies . . . ."  (Pub. Res. Code § 21080, italics added.)  A "discretionary project" is defined as one "which requires the exercise of judgment or deliberation when the public agency or body decides to approve or disapprove a particular activity, as distinguished from situations where the public agency or body merely has to determine whether there has been conformity with applicable statutes, ordinances, or regulations."  (Guidelines, § 15357.)  The "touchstone" for determining whether an agency is required to prepare an EIR is whether the agency could meaningfully address any environmental concerns that might be identified in the EIR: " 'As applied to private projects, the purpose of CEQA is to minimize the adverse effects of new construction on the environment.  To serve this goal the act requires assessment of environmental consequences where government has the power through its regulatory powers to eliminate or mitigate one or more adverse environmental consequences a study could reveal. [¶] Thus the touchstone is whether the approval process involved allows the government to shape the project in any way which could respond to any of the concerns which might be identified in an environmental impact report.  And when is government foreclosed from influencing the shape of the project? Only when a private party can legally compel approval without any changes in the design of its project which might alleviate adverse environmental consequences.' "  (*San Diego Navy Broadway Complex Coalition v. City of San Diego* (2010) 185 Cal.App.4th 924, 933 (*San Diego Navy*), citing *Friends of Westwood, Inc. v. City of Los Angeles* (1987) 191 Cal.App.3d 259, 266–267 (*Friends of Westwood*), italics omitted.)

When a project involves both discretionary and non-discretionary actions, it will be deemed discretionary. (*Friends of Westwood*, *supra*, 191 Cal.App.3d at 270.) However, the discretionary component of the action must give the agency the authority to consider a project's environmental consequences to trigger CEQA. (*Sierra Club v. Napa County Bd. of Supervisors* (2012) 205 Cal.App.4th 162, 179 (*Sierra Club*); *San Diego Navy*, *supra*, 185 Cal.App.4th at p. 934.)

C. *Non-Delegation*

Appellants argue the City and City Council did not proceed in the manner required by law. Appellants cite authority stating that CEQA requires a decision by the *elected* City body—here, the City Council—and contend that no such decision was made in this case because the City Council did not consider issues unrelated to aesthetics when determining that CEQA did not apply. We disagree.

In support of their argument, appellants rely on *Vedanta Society of Southern California v. California Quartet, Ltd.* (2000) 84 Cal.App.4th 517, 534–535 and *Kleist v. City of Glendale* (1976) 56 Cal.App.3d 770, 779. Those decisions stand for the uncontroversial proposition that the elected decision makers of a local body have the ultimate responsibility for making a decision under CEQA and delegation is inconsistent with that rule. (*Ibid.*) Here, the unelected Planning Commission found the project exempt and appellants took an appeal to the full elected City Council. The City Council held a full hearing and issued findings on this appeal. There was no improper delegation of the City's authority under CEQA. (Cf. *Greenebaum v. City of Los Angeles* (1984) 153 Cal.App.3d 391, 402–403 [city council reviewed and considered EIR and did not improperly delegate that responsibility to planning department's deputy advisory agency].)

The City Council did approve the project without requiring an EIR or issuing a negative declaration, finding the Class 32 infill exemption applied and in any event it could not consider issues other than design review in light of the local ordinance. Appellants argue that because the City Council limited its review of environmental issues, the case is akin to *Vedanta*. We disagree. In *Vedanta*, the court reversed after it

8

found that a tie vote during an appeal to the board of supervisors, which left the decision of the planning commission in that case intact by default, did not amount to the required consideration by the board. (*Vedanta*, *supra*, 84 Cal.App.4th at p. 527.) But the City Council in this case *did* act—just not in the way that appellants had hoped. As we shall explain, the City Council properly limited the scope of its review as required by the ordinance. But it did not abdicate its duty to act, and did not delegate its ultimate duty to the Planning Commission in so doing.

Sections 17.08.060, 17.08.180(A) and 17.08.180(H) of the St. Helena Municipal Code did not require the City Council to consider the environmental consequences of a multi-family project in an HR district as appellants suggest. Collectively, those ordinances provide that an appeal of a decision by the Planning Commission may be taken to the full City Council, that the City Council's review is de novo, and that the final decision-making body (here, the City Council) may modify a proposed discretionary project. They do not expand the City Council's discretion beyond the language of the Municipal Code itself.

D. *Applicability of Class 32 Infill Exemption*

Appellants complain the City Council's decision to deny the appeal was unsupported because it did not consider the whole of the project before approving it. Appellants contend that before the City Council could properly adopt a Class 32 infill exemption under CEQA Guidelines section 15332, it was required by the terms of that exemption to determine whether the proposed project would " 'result in any significant effects relating to traffic, noise, air quality or water quality.' " (CEQA Guidelines, § 15332(d).) They also contend the City Council should have considered the applicability of a blanket exception to this categorical exemption, as set forth in CEQA Guidelines section 15300.2, which provides, "[a] categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." (CEQA Guidelines § 15300.2(c); *Banker's Hill, Hillcrest, Park West Community Preservation Group v. City of San Diego* (2006) 139 Cal.App.4th 249, 260.) Appellants argue the City Council took

the City Attorney's advice and failed to consider any environmental issues relating to this project.

Assuming the City Council did not consider traffic, noise or air and water quality for purposes of the Class 32 exemption despite its findings to the contrary, it nonetheless properly found that its discretion was limited to design review, given that no use permit was required for multi-family housing in HR districts. (See *Friends of Davis v. City of Davis* (2000) 83 Cal.App.4th 1004, 1010–1011 (*Friends of Davis*) [when use is consistent with local zoning and a use permit either is not required or has been obtained, issuance of building permit is usually ministerial act].) It also found, appropriately, that the issues addressed during design review did not require the separate invocation of CEQA.

"A city is not, pursuant to general law, required to have a design review ordinance. Accordingly, where, as here, a city chooses to impose such an additional level of review, it is for the city to determine the scope that such review will entail." (*Friends of Davis*, *supra*, 83 Cal.App.4th at p. 1014.) "The Guidelines recognize that the application of CEQA to a local ordinance is dependent upon the scope and interpretation of the local ordinance, rather than vice versa. . . . The Guidelines note[d] that CEQA does not grant an agency new powers independent of the powers granted by other laws. (Guidelines, § 15040, subd. (a).) Rather, the exercise of an agency's authority under a particular law must be within the scope of the agency's authority provided by that law and must be consistent with express or implied limitations provided by other laws." (*Id*. at pp. 1014–1015.)

In this case, the City Council found the design review ordinances prevented it from disapproving the project for non-design related matters. This was correct. Under section 17.164.020 of the St. Helena Municipal Code, "The purpose of design review is: [¶] A. To promote those qualities in the environment which bring value to the community; [¶] B. To foster the attractiveness and functional utility of the community as a place to live and work; [¶] C. To preserve the character and quality of our heritage by maintaining the integrity of those areas which have a discernible character or are of

10

special historic significance; [¶] D. To protect certain public investments in the area; [¶] E. To encourage, where appropriate, a mix of uses within permissible use zones; [¶] F. To raise the level of community expectations for the quality of its environment." Under section 17.164.030, the Planning Commission (and City Council) should consider the following: "1. Consistency and compatibility with applicable elements of the general plan; [¶] 2. Compatibility of design with the immediate environment of the site; [¶] 3. Relationship of the design to the site; [¶] 4. Determination that the design is compatible in areas considered by the board as having a unified design or historical character; [¶] 5. Whether the design promotes harmonious transition in scale and character in areas between different designated land uses; [¶] 6. Compatibility with future construction both on and off the site; [¶] 7. Whether the architectural design of structures and their materials and colors are appropriate to the function of the project; [¶] 8. Whether the planning and siting of the various functions and buildings on the site create an internal sense of order and provide a desirable environment for occupants, visitors and the general community; [¶] 9. Whether the amount and arrangement of open space and landscaping are appropriate to the design and the function of the structures; [¶] 10. Whether access to the property and circulation systems are safe and convenient for pedestrians, cyclists and vehicles; [¶] 11. Whether natural features are appropriately preserved and integrated with the project; [¶] 12. Whether the materials, textures, colors and details of construction are an appropriate expression of its design concept and function and whether they are compatible with the adjacent and neighboring structures and functions; [¶] 13. Whether the landscape design concept for the site, as shown by the relationship of plant masses, open space, scale, plant forms and foliage textures and colors create a desirable and functional environment and whether the landscape concept depicts an appropriate unity with the various buildings on the site; [¶] 14. Whether sustainability and climate protection are promoted through the use of green building practices such as appropriate site/architectural design, use of green building materials, energy efficient systems and water efficient landscape materials."

11

The City Council made extensive findings pertaining to these elements and found that the proposed project met all of them.  It concluded that CEQA review was "limited to  design issues such as scale, orientation, bulk, mass, materials and colors," and the proposed project would not result in design-related CEQA impacts.  These findings were supported by substantial evidence and must be upheld on appeal.  (See *Breneric Associates v. City of Del Mar* (1998) 69 Cal.App.4th 166, 175–176 [applying substantial evidence standard to decision on design review].)

Appellants' complaints about the project include its appearance relative to the historical homes in the area.  This does not mean review under CEQA was required. "[W]e do not believe that our Legislature in enacting CEQA. . . intended to require an EIR where the sole environmental impact is the aesthetic merit of a building in a highly developed area.  [Citations.]  To rule otherwise would mean that an EIR would be required for every urban building project that is not exempt under CEQA if enough people could be marshaled to complain about how it will look.  While there may be situations where it is unclear whether an aesthetic impact like the one alleged here arises in a 'particularly sensitive' context ([CEQA] Guidelines, § 15300.2(c) [exemption shall not be granted "when there is a reasonable possibility the activity will have an unusual effect on the environment due to unusual circumstances"]) where it could be considered environmentally significant, this case does not test that boundary."  (*Bowman v. City of Berkeley* (2004) 122 Cal.App.4th 572, 592 (*Bowman*).)  While local laws do not preempt CEQA, "aesthetic issues like the one raised here are ordinarily the province of local design review, not CEQA."  (*Id*. at p. 593.)  "Where a project must undergo design review under local law, that process itself can be found to mitigate purely aesthetic impacts to insignificance, even if some people are dissatisfied with the outcome. A contrary holding that mandated redundant analysis would only produce needless delay and expense."  (*Id*. at p. 594.)  St. Helena is not as urbanized as Berkeley, the site of the

project in *Bowman*, but the principles of that case apply to the design review in this case, which cannot be used to impose environmental conditions.[3]

Appellants argue that because the City had discretion to conduct design review the entire project was discretionary and subject to CEQA. (See CEQA Guidelines § 15268(d).) They rely on authorities stating that where a project involves both discretionary and ministerial approvals, the entire project will be deemed discretionary. (E.g., *Friends of Westwood*, *supra*, 191 Cal.App.3d at p. 270; *Day*, *supra*, 51 Cal.App.3d at p. 823; *People v. Department of Housing and Community Dev.* (1975) 45 Cal.App.3d 185, 193–194.) But this rule applies only when the discretionary component of the project gives the agency the authority to mitigate environmental impacts. (See *Sierra Club supra*, 205 Cal.App.4th at p. 179; *San Diego Navy*, *supra*, 185 Cal.App.4th at p. 934.)

Because of the City's lack of any discretion to address environmental effects, it is unnecessary to rely on the Class 32 exemption and equally unnecessary to spend much time on appellants' contention that the proposed project did not qualify for an exemption because it was not consistent with the general plan. (CEQA Guidelines, § 15332(a).) We note the City Council found the proposed project consistent with the general plan and addressed appellants' arguments to the contrary in great detail. In light of these findings, which are supported by the evidence, it did not abuse its discretion in finding the proposed project was consistent with the general plan. (See *Orange Citizens for Parks & Recreation v. Superior Court* (2016) 2 Cal.5th 141, 154–155 [review as to whether city erred in finding project consistent with general plan limited to abuse of discretion].)

It is also unnecessary to resolve whether the Class 32 infill exemption was inapplicable due to an exception because "there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances."

---

[3] It is unnecessary to resolve respondents' contention that appellants have forfeited their claim that the design review ordinances themselves contain language that renders CEQA applicable in this case. (See *North Coast Rivers Alliance v. Marin Water Dist. Bd.* (2013) 216 Cal.App.4th 614, 623–624.)

(CEQA Guidelines, § 15300.2(c).) Because CEQA was limited in scope to design review whether or not the Class 32 exemption applied, any exception to the exemption was irrelevant. In any event, the subdivision establishing the exception applies only when the challenger proves both an unusual circumstance and a significant environmental effect as a result of that circumstance. (*Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1105; *Walters v. City of Redondo Beach* (2016) 1 Cal.App.5th 809, 819–820.) Nothing about the proposed project was "unusual" within the meaning of the CEQA Guidelines.[4]

---

[4] We deny as unnecessary real party in interest's request for judicial notice, filed July 27, 2018.

14

## III.  DISPOSITION

The judgment is affirmed.  Ordinary costs on appeal are awarded to respondents.

_____
NEEDHAM, J.

We concur.

_____
SIMONS, ACTING P.J.

_____
BRUINIERS, J. [5]

(A153238)

_____
[5]    Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice purusant to article VI, section 6 of the California Constitution.

16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| McCORKLE EASTSIDE NEIGHBORHOOD GROUP et al.,<br><br>　　　Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF ST. HELENA et al.,<br><br>　　　Defendants and Respondents. | A153238<br><br>(Napa County<br>Super. Ct. No. 17CV000205)<br><br>ORDER GRANTING REQUESTS FOR PUBLICATION; NO CHANGE IN JUDGMENT |

The California Building Industry Association, California Infill Builders Federation, Treasury Wine Estates, Americas LLC, and the California Chapter of the American Planning Association have each filed a request that our opinion filed on December 18, 2018, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The requests are GRANTED. The opinion is ordered published in the Official Reports.

No change in judgment.

Date_____　　　_____ P.J.

Napa County Superior Court, No. 17CV000205, Michael L. Byrne; Mark S. Boessenecker, Judges.

Jeffer Mangels Butler & Mitchell, Mathew D. Hinks; Jackson Lewis P.C., David Bradshaw and Mintz Levin Cohn Ferris Glovsky and Popeo PC, Jonathan Welner for Plaintiffs and Appellants.

Burke, Williams & Sorensen, Thomas B. Brown, Stephen E. Velyvis for Defendants and Respondents.

Monchamp Meldrum, Amanda Monchamp and Joanna L. Meldrum for Real Party in Interest.