[No. D055699. Fourth Dist., Div. One. June 17, 2010.]

SAN DIEGO NAVY BROADWAY COMPLEX COALITION, Plaintiff and Appellant, v.
CITY OF SAN DIEGO, Defendant and Respondent;
MANCHESTER PACIFIC GATEWAY LLC, Real Party in Interest and Respondent.

926

## COUNSEL

Briggs Law Corporation, Cory J. Briggs and Mekaela M. Gladden for Plaintiff and Appellant.

Jan I. Goldsmith, City Attorney, Donald R. Worley, Assistant City Attorney, and Heather L. Stroud, Deputy City Attorney, for Defendant and Respondent.

Cooley Godward Kronish, Steven M. Strauss and Summer J. Wynn for Real Party in Interest and Respondent.

**OPINION**

**AARON, J.—**

I

INTRODUCTION

The California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.)[1] requires that a public agency prepare an environmental impact report (EIR) whenever the agency undertakes a "discretionary" project that may have a significant impact on the environment. (§ 21080.) Courts have concluded that the "touchstone" for determining whether an agency has undertaken a discretionary action that requires the preparation of an EIR is whether the agency would be able to meaningfully address the environmental concerns that might be identified in the EIR. (*Friends of Westwood, Inc. v. City of Los Angeles* (1987) 191 Cal.App.3d 259, 266–267 [235 Cal.Rptr. 788] (*Friends of Westwood*).) If an agency lacks such authority, then "environmental review would be a meaningless exercise." (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 117 [65 Cal.Rptr.2d 580, 939 P.2d 1280] (*Mountain Lion Foundation*).)

After an initial EIR is certified, CEQA establishes a presumption against additional environmental review. An agency has jurisdiction to prepare a subsequent or supplemental EIR only if the agency grants a "discretionary" approval on the project (Guidelines, § 15162, subd. (c)),[2] and certain statutorily enumerated new circumstances occur (§ 21166; see also Guidelines, §§ 15162, subd. (a), 15163).

In this case, we conclude that the City of San Diego (the City) was not required to prepare a subsequent or supplemental EIR regarding the potential impact of a redevelopment project called the Navy Broadway Complex Project (the Project), on global climate change, because the City did not grant a discretionary approval that would provide it with the authority to address the Project's impact on this environmental issue.

---

[1] Unless otherwise specified, all subsequent statutory references are to the Public Resources Code.

[2] References to "Guidelines" are to the administrative guidelines for the implementation of CEQA. (Cal. Code Regs., tit. 14, § 15000 et seq.)

II

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Project and the initial EIR*

In 1992, the City entered into a development agreement with the United States of America for the redevelopment of certain waterfront property in downtown San Diego. The development agreement contemplated that the developer of the Project would be permitted to build up to 1,650,000 square feet of office space, 1,220,000 square feet of hotel space, 25,000 square feet of retail space, and 55,000 square feet of museum or other public attraction space.

The development agreement also established a development plan and a series of urban design guidelines related to the aesthetic design of the Project. The development agreement required that the developer submit its construction documents to the Centre City Development Corporation (CCDC)[3] so that the CCDC could determine whether the developer's submittals were consistent with the aesthetic criteria established in the development plan and the urban design guidelines.

At the time it entered into the development agreement, the City certified an EIR that analyzed the Project's potential environmental impacts.[4]

### B. *The CCDC determines that no further environmental review is warranted in connection with CCDC's consistency reviews, and the City upholds the CCDC's determinations*

In 2006 and 2007, the developer, real party in interest Manchester Pacific Gateway LLC (Manchester), submitted its construction plans to the CCDC.[5] In connection with its consistency reviews, the CCDC determined that no further environmental review of the Project was warranted under CEQA. The San Diego Navy Broadway Complex Coalition (the Coalition), a nonprofit public benefit organization whose members have an interest in "ensuring informed and responsible growth," appealed the CCDC's decision to the city

---

[3] The CCDC is a public nonprofit corporation created to staff and implement downtown San Diego redevelopment projects.

[4] The 1992 EIR incorporated a 1990 environmental impact statement (EIS). An EIS is an environmental report that the National Environmental Policy Act of 1969 (42 U.S.C. § 4321) requires to be prepared for certain actions undertaken by the federal government. (See *Bowman v. City of Berkeley* (2004) 122 Cal.App.4th 572, 591 [18 Cal.Rptr.3d 814].)

[5] Unfavorable market conditions during the 1990's delayed implementation of the Project.

council.[6] In January 2007, and again in February 2008, the city council denied the Coalition's appeals and upheld the CCDC's CEQA determinations.

## C. *The Coalition's petition for writ of mandate*

In February 2007, the Coalition filed a petition for writ of mandate in which it claimed, among other contentions, that the City had violated CEQA in January 2007 in determining that no further environmental review of the Project was required. In March 2008, the Coalition amended its petition to add a challenge to the City's February 2008 CEQA determination.[7]

The Coalition filed a brief in support of its amended petition for writ of mandate in which it argued that the City was required to prepare an updated EIR to address the Project's impacts on numerous environmental issues, including water supply, public services, groundwater contamination, and air pollution, and the Project's "greenhouse-gas emissions and vulnerability to climate-change." In arguing that the CCDC's consistency determinations constituted "discretionary" actions under CEQA sufficient to require further environmental review, the Coalition acknowledged that "the scope of CCDC's determinations was limited to the issue of [submittals'] consistency with the Development Plan and Urban Design Guidelines as set forth in the Development Agreement," but claimed that the CCDC had made a "subjective" determination as to whether Manchester's submittals were of "sufficient quality and beauty" so as to be consistent with the development plan and urban design guidelines.

The City and Manchester filed a joint opposition to the amended petition. In their opposition, the City and Manchester argued that the Coalition had failed to exhaust its administrative remedies, and that it had failed to fairly present all of the evidence in the administrative record that was relevant to its claims. As to the merits of the Coalition's claims, the City and Manchester acknowledged that the City had previously concluded, at the administrative level, that CCDC's " 'evaluation of the plans and specifications' submitted by [Manchester] would involve a measure of 'discretion and judgment' sufficient to trigger CEQA, and that the City, as the lead agency and party to the

---

[6] The Coalition referred to itself as the "Broadway Complex Coalition" in its appeal to the city council. We assume for purposes of this opinion that this entity and the Coalition are the same.

[7] The first amended petition for writ of mandate contained in the record does not bear a file stamp. The document is dated March 31, 2008.

Development Agreement, had a duty to evaluate whether any of the conditions of Section 21166 were met."[8] The City argued that none of the environmental concerns that the Coalition had raised met the conditions of section 21166, including the Project's greenhouse gas emissions and its potential impact on global climate change.

In addition to the joint opposition, Manchester also filed a supplemental opposition to the amended petition. In its supplemental opposition, Manchester argued that the CCDC's consistency reviews did not constitute discretionary actions sufficient to trigger potential further environmental review under section 21166. Manchester argued that "[u]nder *Friends of Westwood*, review is not discretionary if it does not allow the agency to shape the project . . . ." Specifically, Manchester contended that, "to the extent CCDC exercises any discretion, it is limited to aesthetics" and that "a modicum of discretion regarding aesthetic ideals does not require environmental review under CEQA."

After further briefing and a hearing, the trial court denied the amended petition. In its order denying the amended petition, the court concluded, as a threshold matter, that the Coalition had failed to adequately exhaust its administrative remedies as to several of the issues that it raised in its amended petition, including its claims pertaining to greenhouse gas emissions and climate change, because it had failed to adequately present those issues to the city council.[9] The court also denied the amended petition on the procedural ground that the Coalition had not fairly presented all of the relevant evidence from the administrative record in its brief. On the merits, the trial court concluded that CCDC's consistency determinations were not discretionary actions under CEQA. The court also concluded that CEQA did not

---

[8] Section 21166 provides: "When an environmental impact report has been prepared for a project pursuant to this division, no subsequent or supplemental environmental impact report shall be required by the lead agency or by any responsible agency, unless one or more of the following events occurs:

"(a) Substantial changes are proposed in the project which will require major revisions of the environmental impact report.

"(b) Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the environmental impact report.

"(c) New information, which was not known and could not have been known at the time the environmental impact report was certified as complete, becomes available."

[9] The trial court stated that the Coalition had not referenced these environmental concerns in its representative's oral remarks before the city council, and that it had not adequately presented the issues in the written materials that it provided to the City. The court reasoned, "Simply including these issues in a PowerPoint presentation that was handed out to the City Council members that set forth three slides to a page in reduced size and print and providing a disk with approximately 6,700 pages of material did not sufficiently put [the City] on notice of said issues."

require the City to prepare an updated EIR concerning the Project's greenhouse gas emissions or global climate change impacts because, at the time the City considered whether an updated EIR was required, CEQA did not require an analysis of these environmental issues.

The trial court subsequently entered a judgment denying the Coalition's amended petition for writ of mandate. The Coalition appeals.[10]

### III

### DISCUSSION

*The trial court properly denied the Coalition's amended petition for writ of mandate*

The Coalition argues that the trial court erred in denying its amended petition for writ of mandate in which it sought an order that the City prepare an "updat[ed]"[11] EIR addressing the Project's impacts on global climate change. Specifically, the Coalition argues, "[T]he trial court's decision should be reversed and [the City] should be ordered to perform a legally sufficient analysis of the Project's [greenhouse gas] emissions and climate-change impacts."[12] We apply the de novo standard of review in considering the threshold issue of whether the City took a discretionary action of a nature that would require it to prepare a subsequent or supplemental EIR, if one of the circumstances specified in section 21166 occurred. (*Health First v. March Joint Powers Authority* (2009) 174 Cal.App.4th 1135, 1142 [96 Cal.Rptr.3d 290] (*Health First*) [applying de novo standard of review in determining whether agency took discretionary action under CEQA].)

---

[10] While this appeal was pending, the City lodged the administrative record with this court. The Coalition lodged, as an exhibit to its reply brief, a copy of a CD/DVD that purportedly contains the material that the Coalition provided to the city council during the administrative proceedings. The Coalition stated that the "content" of the CD/DVD is included in the administrative record, but that "the CD/DVD has been lodged so th[is] Court has the benefit of having the material in the same format as it was originally presented at the administrative hearing." The City and Manchester have moved to strike the exhibit, noting that the exhibit is not contained in the administrative record and that the files contained on the CD/DVD are documents that total approximately 6,700 pages in length—far in excess of the 10-page limit under California Rules of Court, rule 8.204(d). We grant the motion to strike for the reasons stated in the City and Manchester's motion.

[11] Although it is not entirely clear from the Coalition's brief whether the Coalition claims that the City was required to prepare a "subsequent EIR" (Guidelines, § 15162) or a "supplement[al] EIR" (Guidelines, § 15163), this distinction is not material to our analysis.

[12] In its brief, the Coalition makes clear the limited nature of its claim, stating, "Although there are many environmental issues that should have been examined or required updating, [the Coalition] is focusing this entire appeal on the issue of the Project's unexamined [greenhouse gasses] because of the significance of the issue."

## A. *Governing law*

### 1. *An agency is required to prepare an EIR only when the agency has the authority to address the environmental concerns that might be raised therein*

CEQA generally applies only to *"discretionary* projects proposed to be carried out or approved by public agencies . . . ." (§ 21080, subd. (a), italics added.) The Guidelines define a discretionary project as follows: " 'Discretionary project' means a project which requires the exercise of judgment or deliberation when the public agency or body decides to approve or disapprove a particular activity, as distinguished from situations where the public agency or body merely has to determine whether there has been conformity with applicable statutes, ordinances, or regulations." (Guidelines, § 15357.)

■ In explaining the significance of the fact that the requirement of environmental review under CEQA is limited to discretionary projects, the court in *Friends of Westwood* held that the "touchstone" for determining whether an agency is required to prepare an EIR is whether the agency could meaningfully address any environmental concerns that might be identified in the EIR: "As applied to private projects, the purpose of CEQA is to minimize the adverse effects of new construction on the environment. To serve this goal the act requires assessment of environmental consequences where government has the power through its regulatory powers to eliminate or mitigate one or more adverse environmental consequences a study could reveal. [¶] Thus the touchstone is whether the approval process involved allows the government to shape the project in any way which could respond to any of the concerns which might be identified in an environmental impact report." (*Friends of Westwood, supra,* 191 Cal.App.3d at pp. 266–267.)

The *Friends of Westwood* court explained the rationale for its conclusion that an agency need not prepare an EIR when it lacks the discretion to respond to potential environmental concerns in the EIR, as follows: "No matter what the EIR might reveal about the terrible environmental consequences of going ahead with a given project the government agency would lack the power (that is, the discretion) to stop or modify it in any relevant way. The agency could not lawfully deny the permit nor condition it in any way which would mitigate the environmental damage in any significant way. The applicant would be able to legally compel issuance of the permit without change. Thus, to require the preparation of an EIR would constitute a useless—and indeed wasteful—gesture." (*Friends of Westwood, supra,* 191 Cal.App.3d at p. 272.)

In *Mountain Lion Foundation*, the California Supreme Court embraced this aspect of *Friends of Westwood*, stating that the limitation of CEQA to

discretionary projects "implicitly recognizes that unless a public agency can shape the project in a way that would respond to concerns raised in an EIR, or its functional equivalent, environmental review would be a meaningless exercise." (*Mountain Lion Foundation, supra,* 16 Cal.4th at p. 117, citing *Friends of Westwood, supra,* 191 Cal.App.3d at p. 267.)

In *Leach v. City of San Diego* (1990) 220 Cal.App.3d 389 [269 Cal.Rptr. 328] (*Leach*), this court adopted the reasoning of *Friends of Westwood,* holding that a municipality was not required to prepare an EIR before the municipality would be permitted to draft water from a reservoir, because the City had little or no ability to minimize the environmental impacts that might be identified in an EIR: "In spite of the environmental consequences, the City could do little or nothing to prevent or modify drafting of water between reservoirs to 'mitigate the environmental damage in any significant way.' ([*Friends of Westwood,*] *supra,* 191 Cal.App.3d at p. 272.) To require an EIR every time drafting of a reservoir is proposed for the ultimate purpose of supplying the community with water would indeed be useless and wasteful." (*Leach, supra,* 220 Cal.App.3d at p. 395.)

■ One treatise has summarized this case law as follows: "Under the reasoning set forth in *Leach,* CEQA does not apply to an agency decision simply because the agency may exercise *some* discretion in approving the project or undertaking. Instead to trigger CEQA compliance, the discretion must be of a certain kind; it must provide the agency with the ability and authority to 'mitigate . . . environmental damage' to some degree. [(]*Leach, supra,* 220 Cal.App.3d at p. 394; *see also Friends of Westwood, supra,* 191 Cal.App.3d at p. 267 (the 'touchstone' question is whether the agency can 'shape the project' to address environmental impacts).[)]" (Remy et al., Guide to CEQA: California Environmental Quality Act (11th ed. 2007) p. 85, some italics omitted.)

### 2. *After an initial EIR is certified, there is a strong presumption against additional environmental review*

■ After an initial EIR is certified, there is a statutory presumption against additional environmental review. (*Moss v. County of Humboldt* (2008) 162 Cal.App.4th 1041, 1049–1050 [76 Cal.Rptr.3d 428] ["after a project has been subjected to environmental review, the statutory presumption flips in favor of the developer and against further review"].) In *Melom v. City of Madera* (2010) 183 Cal.App.4th 41, 48–49 [106 Cal.Rptr.3d 755], the court explained that section 21166 prohibits agencies from requiring additional environmental review after an initial EIR is certified unless certain specified conditions are met:

" '[S]ection 21166 provides that, when environmental review has been performed, no subsequent or supplemental EIR shall be required by the lead agency or any responsible agency unless (1) substantial changes are proposed in the project that will require major revisions of the EIR, or (2) substantial changes occur with respect to the circumstances under which the project will be undertaken that will require major revisions in the EIR, or (3) new information, which was not known and could not have been known when the EIR was certified, becomes available.

■ " 'This provision represents a shift in the applicable policy considerations. The low threshold for requiring the preparation of an EIR in the first instance is no longer applicable; instead, agencies are prohibited from requiring further environmental review unless the stated conditions are met. [Citation.]

" 'Thus, Public Resources Code section 21166 provides a balance against the burdens created by the environmental review process and accords a reasonable measure of finality and certainty to the results achieved. [Citation.] At this point, the interests of finality are favored over the policy of favoring public comment, and the rule applies even if the initial review is discovered to have been inaccurate and misleading in the description of a significant effect or the severity of its consequences. [Citation.]' [Citation.]

" '[S]ection 21166 comes into play precisely because in-depth review has already occurred, the time for challenging the sufficiency of the original EIR has long since expired [citation], and the question is whether circumstances have *changed* enough to justify *repeating* a substantial portion of the process.' [Citation.]"

3.  *The requirement to prepare a subsequent EIR or a supplemental EIR arises only where the agency has discretion to respond to the environmental concerns raised in the new EIR, and one of the circumstances specified in section 21166 has occurred*

■ As with the preparation of an initial EIR (§ 21080), an agency is required to prepare a subsequent or supplemental EIR only where the agency grants a "discretionary" approval. (See Guidelines, §§ 15162, subd. (c), 15163 [both implementing § 21166]; *Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479 [98 Cal.Rptr.2d 202] (*Cucamongans*) [" '[a] public agency may require a subsequent EIR *only when the agency grants a discretionary approval . . .*' "].) In the absence of such discretionary approval, the agency has no jurisdiction to prepare a subsequent or supplemental EIR. (*Cucamongans, supra,* 82 Cal.App.4th at p. 479.) This jurisdictional limitation is consistent with the

notion that it is nonsensical to require an agency to prepare a subsequent or supplemental EIR unless the agency has the authority to take action that would respond to any concerns that might be raised in the updated EIR. (Cf. *Mountain Lion Foundation, supra,* 16 Cal.4th at p. 117.)

Guidelines, section 15162, subdivision (c) provides: "(c) Once a project has been approved, the lead agency's role in project approval is completed, unless further discretionary approval on that project is required. Information appearing after an approval does not require reopening of that approval. If after the project is approved, any of the conditions described in subdivision (a) occurs,[13] a subsequent EIR or negative declaration shall only be prepared by the public agency which grants the next discretionary approval for the project, if any. In this situation no other responsible agency shall grant an approval for the project until the subsequent EIR has been certified or subsequent negative declaration adopted." (See also Guidelines, § 15163, subd. (a)(1), (2) [providing that an agency may prepare a supplemental EIR rather than a subsequent EIR if "the conditions described in Section 15162 would require the preparation of a subsequent EIR," and "[o]nly minor additions or changes would be necessary to make the previous EIR adequately apply to the project in the changed situation"].)

In *Health First, supra,* 174 Cal.App.4th at page 1141, the court considered whether an agency's approval of a design plan application for a large warehouse facility constituted a discretionary action under CEQA, such that the agency would be required to prepare a subsequent or supplemental EIR if one of the circumstances specified in section 21166 had occurred. In 2003, the agency approved a plan to reuse a portion of a military base as a business center. (*Health First, supra,* 174 Cal.App.4th at p. 1139.) Together with its 2003 approval of the plan, the agency certified an EIR (*ibid.*), and established a series of design guidelines that "set[] forth standards for landscaping, parking, architecture, and other design elements" (*id.* at p. 1140). In 2006, a company submitted a design plan application to place a "large warehouse distribution facility" in the business center. (*Id.* at p. 1137.) The agency performed a consistency review and determined that the proposed application was consistent with the plan, the EIR, and the design guidelines. (*Id.* at p. 1141.) A citizen's group filed a petition for writ of mandate, challenging the approval as unlawful under CEQA (174 Cal.App.4th at p. 1137), and the trial court granted the petition. (*Ibid.*)

The agency and the company appealed, claiming that the agency's approval of the design plan application did not constitute a discretionary action under CEQA. (*Health First, supra,* 174 Cal.App.4th at pp. 1138, 1144.) In

---

[13] Guidelines, section 15162, subdivision (a) implements section 21166 and specifies the various circumstances under which a subsequent EIR may be performed.

determining whether the agency had taken a discretionary action, the *Health First* court cited case law in which courts had considered the meaning of "discretionary" as used in section 21080. (*Health First, supra,* 174 Cal.App.4th at pp. 1142–1143.) Specifically, the *Health First* court quoted the Supreme Court's statement in *Mountain Lion Foundation* that CEQA applies only to an agency's discretionary actions because " 'unless a public agency can shape the project in a way that would respond to concerns raised in an EIR, or its functional equivalent, environmental review would be a meaningless exercise.' " (*Health First, supra,* 174 Cal.App.4th at p. 1143, quoting *Mountain Lion Foundation, supra,* 16 Cal.4th at p. 117.) In concluding that the agency had not undertaken any discretionary action in approving the design application, the *Health First* court noted that the agency's "review of [the company's] design plan application . . . involved deciding whether the application was consistent with the requirements, fixed standards, and proposed mitigation of the . . . plan, the . . . EIR, and the design guidelines." (*Health First, supra,* 174 Cal.App.4th at p. 1144.) The *Health First* court concluded that no additional environmental review was warranted, and reversed the trial court's judgment. (*Id.* at pp. 1144, 1146.)

### B. *The City was not required to prepare a subsequent or supplemental EIR concerning greenhouse gas emissions or global climate change*

The Coalition acknowledges that "[u]nless there is discretionary action on the proposal after the initial approval is given . . . there is no basis for further environmental review . . . ." The Coalition claims that the CCDC's[14] action in conducting consistency reviews of Manchester's submittals constituted such discretionary action. Specifically, the Coalition argues that the development agreement required the CCDC to exercise its subjective judgment as to numerous aesthetic issues related to the Project. For example, the Coalition notes that the development agreement required the CCDC to determine whether Manchester's submittals were consistent with specified design requirements in the development agreement, including:

"Pacific Highway frontage shall be designed to reinforce the street's role as a major landscaped gateway boulevard . . . . Ground-level facades shall be substantially transparent to maximize the sense of contrast between indoor and outdoor activities. [¶] . . . [¶]

---

[14] Although the CCDC is no longer a party to this action, both parties assume that any duty on the part of the City to update the EIR is contingent on an analysis of the CCDC's actions in performing the consistency reviews. For example, the Coalition asserts in its brief that the development agreement provides that the CCDC would act as "[an] agent for [the City]" in performing the consistency reviews. In its brief, the City assumes "[f]or the sake of argument" that the CCDC's "actions are relevant to the City's duties." Accordingly, we assume for purposes of this opinion that actions taken by the CCDC could trigger the City's duty to update the 1992 EIR.

"The design of the streets shall emphasize pedestrian access through wide sidewalks and continuous landscaping.

"Colorful awnings, arcades, and/or similar features shall be incorporated into the facade design to reinforce the pedestrian environment. [¶] . . . [¶]

"Towers shall be designed as slender structures to minimize view obstructions.

"A palette of colors and building materials shall be developed for the Broadway complex to ensure harmonious treatment." (Italics omitted.)

The Coalition argues that "[d]etermining whether such subjective standards have been met involves the exercise of judgment and deliberation, leaving CCDC with substantial leeway to decide whether [Manchester's submittals] were of sufficient quality and beauty," and thus, that the CCDC's determinations constitute discretionary acts within the meaning of CEQA.

Assuming for purposes of this opinion that in performing the consistency reviews, the CCDC was required to exercise discretionary authority (Guidelines, § 15163, subd. (c)) with respect to various *aesthetic* issues on the Project, the Coalition has made no showing that the scope of the CCDC's discretion extended to the Project's potential impacts on *global climate change*. We conclude that the failure to make such a showing is fatal to the Coalition's claim.

■ The rationale for requiring an EIR is to inform the agency of the potential environmental consequences of its approval of a project. (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 394 [253 Cal.Rptr. 426, 764 P.2d 278] ["A fundamental purpose of an EIR is to provide decision makers with information they can use in deciding *whether* to approve a proposed project . . . ."]; accord, Guidelines, § 15163, subd. (e) ["When the agency decides whether to approve the project, the decision-making body shall consider the previous EIR as revised by the supplemental EIR."].) Where an agency has no authority to modify a project based on the analysis contained in the EIR, there is no basis for requiring the agency to prepare the EIR. This principle has been repeatedly stressed in cases in which courts have considered the limitation of CEQA to discretionary projects in the preparation of an *initial* EIR (e.g., *Friends of Westwood, supra,* 191 Cal.App.3d at p. 272), and we see no reason why the same principle should not apply with equal force in the context of considering whether an agency is required to prepare a *subsequent* or *supplemental* EIR. To hold that an agency must prepare a subsequent or supplemental EIR concerning an environmental issue over which its discretionary authority does

not extend would be inconsistent with *Friends of Westwood* and its progeny, and with the statutory presumption against additional environmental review, as discussed in the case law interpreting section 21166. (See *Moss v. County of Humboldt, supra,* 162 Cal.App.4th at pp. 1049–1050.)

The fact that the CCDC could arguably exercise discretionary authority to alter the aesthetics of the Project so as to make the Project consistent with the development agreement does not demonstrate that the CCDC had the authority to modify the Project in accordance with a proposed updated EIR so as to reduce the impact of the Project on global climate change. The limited scope of the CCDC's discretionary authority in conducting consistency reviews is underscored by the fact that the development agreement provides that the CCDC could not "unreasonably" withhold its consistency determinations, and that the CCDC could "not require any change which is inconsistent with the Environmental Impact Statement[15] for the Project . . . ." The development agreement thus makes clear that the CCDC's role in performing a consistency review is strictly limited to determining whether Manchester's submittals were consistent with the aesthetic guidelines contained in the development agreement.

We reject the Coalition's argument that the fact that the CCDC's discretion in conducting the consistency reviews "centered around aesthetic issues," is of "no consequence," because "[a]esthetics are built into CEQA's definition of 'environment.' " Whether CEQA may be applied to address issues pertaining to aesthetics is irrelevant to this appeal, because the Coalition is not requesting that the City perform a subsequent or supplemental EIR concerning the *aesthetics* of the Project.

We are similarly not persuaded by the Coalition's citation of various memoranda from the City and the CCDC contained in the administrative record, in which those entities conclude that the CCDC's consistency reviews constituted discretionary actions under Guidelines, section 15162, subdivision (c). In none of these memoranda did the City or the CCDC suggest that the CCDC had discretion to consider the Project's impact on *global climate change.* To the contrary, there is evidence in the record that the CCDC concluded that its discretion was limited in scope to a consideration of the Project's aesthetics. For example, in an October 25, 2006 memorandum on the subject, CCDC staff wrote:

"The Urban Design Guidelines adopted with the [Development] Agreement set forth largely objective criteria by which future proposed projects within

---

[15] As noted in footnote 4, *ante,* in 1992, at the time it entered into the development agreement, the City certified an EIR that incorporated a 1990 EIS that analyzed the potential environment impacts of the Project.

the scope of the [Development] Agreement should be assessed by CCDC[.] [I]ssues relating to maximum-square footage, amount of parking, building heights, setbacks, transparency of facades, and pedestrian access all involve objective criteria, with no discretion afforded to CCDC to impose additional conditions on the Project[.] [H]owever[,] the Design Guidelines do contain some subjective criteria, and therefore, CCDC must exercise discretion [in reviewing] the design of the Project, *albeit limited to the aesthetic considerations* set forth in those subjective criteria of the Design Guidelines.

"The exercise of some discretion does not automatically qualify an agency action as a project subject to CEQA. To trigger CEQA compliance, the discretion must be of a certain kind; it must provide the agency with the ability and authority to 'mitigate . . . environmental damage' to some degree. (*Leach*[, *supra*, 220 Cal.App.3d at p. 395].) As stated above, CCDC only has limited discretion to review the Project as defined in the [Development] Agreement for consistency with the subjective criteria in the Design Guidelines. Staff has taken a conservative approach and assumed that its consistency determination, *with respect to the subjective aesthetic criteria* is discretionary, and therefore, potentially subject to CEQA." (Italics added.)

■ The fact that the CCDC made a "conservative" determination that its exercise of discretion as to *aesthetic issues* on the Project might be subject to CEQA, does not establish that the CCDC exercised any discretionary authority to mitigate the Project's impact on *global climate change*.

The Coalition has not argued on appeal that in exercising its discretion in determining whether Manchester's submittals were consistent with the design plan and urban design guidelines, the CCDC could consider the impact of the Project on global climate change, and we see no basis for such an argument. Absent such a showing, there is no basis for requiring the City to conduct an environmental review of an issue as to which it would have no ability to respond. (See Remy et al., Guide to CEQA: California Environmental Quality Act, *supra*, p. 85 ["the discretion must be of a certain kind; it must provide the agency with the ability and authority to 'mitigate . . . environmental damage' to some degree," quoting *Leach, supra*, 220 Cal.App.3d at p. 394].)

We conclude that the Coalition has not demonstrated that the CCDC had discretionary authority (Guidelines, § 15163, subd. (c)) to address potential environmental concerns regarding global climate change that might be identified in a proposed updated EIR. Under these circumstances, environmental review of the impact of the Project on global climate change "would be a meaningless exercise." (*Mountain Lion Foundation, supra*, 16 Cal.4th at

p. 117.) We therefore conclude that the trial court did not err in denying the Coalition's amended petition.[16]

## IV

## DISPOSITION

The judgment is affirmed. The Coalition is to bear costs on appeal.

Haller, Acting P. J., and Irion, J., concurred.

A petition for a rehearing was denied July 7, 2010.

---

[16] In light of our conclusion, we need not consider the City and Manchester's alternative grounds for affirmance.