Filed 6/20/13  Venturans for Responsible Growth v. City of San Buenaventura CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| VENTURANS FOR RESPONSIBLE GROWTH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SAN BUENAVENTURA,<br><br>    Defendant and Respondent;<br><br>WINCO FOODS, LLC,<br><br>    Real Party in Interest. | 2d Civil No. B242008<br>(Super. Ct. No. 56-2011-00402390-CU-WM-OXN)<br>(Ventura County) |

Venturans for Responsible Growth, an unincorporated Association (Venturans) appeal a judgment denying its petition for peremptory and administrative writ of mandate.  (Code Civ. Proc., §§ 1085, 1094.5.)  Venturans contend that the City of San Buenaventura's (City) design approval for exterior modifications to an existing building and grant of a sign variance violated the California Environmental Quality Act (CEQA; Pub. Resources Code § 21000 et seq.), and county and city codes.  We affirm.

FACTS

WINCO Foods, LLC (WINCO) intends to operate a 24-hour grocery store at the Riviera Shopping Center on Telephone Road in the City of Ventura (City). The space in which WINCO intends to operate was occupied by Mervyn's Department Store from 1992 to 2008.

The Riviera Shopping Center was constructed in the early 1980s. An environmental impact report (EIR) for the shopping center project was certified in 1977.

The WINCO property is in the City's commercial planned development (CPD) zone. Grocery stores are a permitted use in the zone. The City's zoning ordinance does not limit operating hours. The only discretionary approvals WINCO needs from the City are for cosmetic improvements to the exterior and a sign variance.

The cosmetic improvements are modifications to the exterior of the existing structure, restriping the parking lot, and removal and replacement of the landscaping. Modifications to the exterior include a tower element at the front of the building. The tower element will increase the height of the building by 22 feet.

The City's current sign ordinance allows signs of 100 square feet. WINCO sought a variance to allow two signs totaling 360.25 square feet.

WINCO applied to the City's design review committee (DRC) for design approval and a sign variance.

Venturans demanded that the City prepare an EIR to study the impacts of the proposed 24-hour grocery store on air quality and traffic. The City conducted an initial study for the project and gave notice that a negative declaration would be prepared. But the City later rescinded the initial study. Instead, the City determined that the project is categorically exempt from CEQA pursuant to Guidelines sections 15301 and 15303.[1]

_____

[1] All references to "Guidelines" are to Title 14 of the California Code of Regulations.

2

## DISCUSSION

## I

Venturans contend CEQA requires a comprehensive review of all environmental impacts.

Unless exempt, all "discretionary projects" proposed to be carried out or approved by a city require environmental review. (Pub. Resources Code, § 21080, subd. (a).) A discretionary project is a project that requires the exercise of judgment or deliberation when a public agency decides to approve or disapprove a particular activity. (Guidelines, § 15357.)

CEQA does not apply to "[m]inisterial projects." (Pub. Resources Code, § 21080, subd. (b)(1).) A ministerial project is a project involving little or no personal judgment by a public official. (Guidelines, § 15369.)

CEQA may require an EIR where the City's approval or denial of a project is a matter of the exercise of its discretion. But even if a project will have significant negative environmental consequences, no EIR is required if the City has no discretion to deny or modify the project. As the court in *Friends of Westwood, Inc. v. City of Los Angeles* (1987) 191 Cal.App.3d 259, 272, explained: "[F]or truly ministerial permits an EIR is irrelevant. No matter what the EIR might reveal about the terrible environmental consequences of going ahead with a given project the government agency would lack the power (that is, the discretion) to stop or modify it in any relevant way. The agency could not lawfully deny the permit nor condition it in any way which would mitigate the environmental damage in any significant way. The applicant would be able to legally compel issuance of the permit without change. Thus, to require the preparation of an EIR would constitute a useless - and indeed wasteful - gesture."

Venturans claim the project is discretionary. It is only discretionary with regard to the exterior design and signs. But Venturans are complaining about lack of environmental review for impacts on air quality and traffic. Those impacts are not

3

related to exterior design and signs. Those impacts are related to the use of the premises as a 24-hour grocery store. The City has no discretion with regard to WINCO's use of the premises as a 24-hour grocery store. Thus, CEQA does not require and EIR to assess impacts related to such use.

Venturans argue that the City's Municipal Code (SBMC) gives the DRC authority to respond to concerns beyond aesthetics or design. Venturans cite SBMC section 24.545.110. "The decision-making authority, in approving an application for design review, may impose such conditions that it deems necessary or desirable to insure that the project authorized by such design review will be established, operated, and maintained in accordance with the findings required by Section 24.545.100 and all other requirements of this zoning ordinance, this Code, and other provisions of law. The decision-making authority may further require reasonable guarantees and evidence that such conditions are being, or will be, complied with. Such conditions imposed by the decision-making authority may involve any factors affecting the colors, materials, design, landscaping, signs, or other architectural features of a project."

Venturans emphasize "all other requirements of this zoning ordinance, this Code, and other provisions of law." (SBMC, § 24.545.110) Venturans fail to include the final sentence, "Such conditions imposed by the decision-making authority may involve any factors affecting the colors, materials, design, landscaping, signs, or other architectural features of a project." (*Ibid.*)

It would be unreasonable to interpret SBMC section 24.545.110 as giving a design review committee authority to impose conditions involving any and all provisions of the law. Instead, the reasonable interpretation of the section is that the authority to impose conditions is limited to "factors affecting colors, materials, design, landscaping, signs or other architectural features of the project." (*Ibid.*)

If there is any doubt about the DRC's authority over WINCO's use of the premises as a 24-hour grocery store, it is resolved by SBMC section 24.545.040,

subdivision A.  That subdivision provides:  "Neither the design review committee, the historic preservation committee, nor the director shall in the course of the design review process for projects or uses requiring no other discretionary permits or approvals, determine the operation or appropriateness of land uses if such uses of land comply with applicable zoning district regulations."

Because the use of the premises as a 24-hour grocery store complies with applicable zoning district regulations, the DRC has no authority whatsoever over WINCO's use of the premises, Venturans' concerns over air quality and traffic arises from the use of the premises, not its exterior design.

Venturans argue that CEQA does not allow partial environmental review.  But nothing in CEQA requires the City to do a useless act.  That is why Public Resources Code section 21080, subdivision (b)(1) provides that CEQA does not apply to ministerial projects.  Because the City has no authority to prevent or modify WINCO's use of the premises as a 24-hour grocery store, environmental review of the impacts of that use would be worthless.  A statute should be interpreted to avoid an absurd result.  (*Cummings v. Stanley* (2009) 177 Cal.App.4th 493, 507-508.)

Venturans' argument was rejected in *San Diego Navy Broadway Complex Coalition v. City of san Diego* (2010) 185 Cal.App.4th 924.  There, the city's discretion in approving the project was limited to design review.  Opponents of the project argued the EIR should include a study of the project's impacts on global warming.  In rejecting the argument, the court noted that the City has no discretion to modify or deny the project based on global warming.  The court stated, "[T]here is no basis for requiring the City to conduct an environmental review of an issue as to which it would have no ability to respond."  (*Id.* at p. 940.)

## II.

Venturans contend the categorical exemption contained in Guidelines section 15301 does not apply.

5

Guidelines section 15301 provides a categorical exemption from CEQA for projects consisting of "minor alteration of existing . . . private structures . . . involving negligible or no expansion of use beyond that existing at the time of the lead agency's determination."

It was not necessary for the City to rely on Guidelines section 15301 to exempt the use of the premises as a 24-hour grocery store from CEQA review. Public Resources Code section 21080, subdivision (b)(1) contains its own categorical exemption for "ministerial projects." Because any permit WINCO might need to operate a 24-hour grocery store would be ministerial, CEQA simply does not apply to the use of the premises for that purpose. (See *San Diego Navy Broadway Complex Coalition v. City of San Diego*, *supra*, 185 Cal.App.4th at p. 940.)

In any event, the City's reliance on Guidelines section 15301 is supported by the evidence. The City bears the burden of demonstrating, based on substantial evidence, that the project falls within the categorical exemption. (*California Unions for Reliable Energy v. Mojave Desert Air Quality Management Dist.* (2009) 178 Cal.App.4th 1225, 1239.) We must determine the scope of the exemption as a matter of law, and then determine whether substantial evidence supports the City's finding that the project falls within the exemption's scope. (*Ibid.*)

Venturans argue adding a tower that increases the building height by 22 feet and a variance allowing 360.25 square feet of signs does not qualify as a "minor alteration." But Guidelines section 15301 gives examples of qualifying projects. One example allows additions to existing structures of up to 10,000 square feet. (Guidelines, § 15301, subd. (e)(2).) If additions of up to 10,000 square feet qualify for the exemption as a "minor alteration," certainly WINCO's cosmetic alterations to the exterior qualify.

Venturans point out the exemption requires a finding that the project involves "negligible or no expansion of use beyond that existing at the time of the lead agency's determination." (Guidelines, § 15301.) Venturans argue that at the time of

6

the lead agency's determination the building had been vacant for three years. Venturans claim that the traffic generated by WINCO's project will exceed even the traffic generated by the building's previous use as a Mervyn's Department Store.

But the only project before the City was WINCO's application to change the building's façade and for a sign variance. The City's approval of the design for the building façade and signs does not involve an expansion of the building's use.

The project is categorically exempt from CEQA review under Guidelines section 15301. We need not determine whether the project is also exempt under Public Resources Code section 21166 or Guidelines section 15303.

Venturans argue that an exception to the categorical exemption applies. Guidelines section 15300.2, subdivision (c) provides: "A categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances."

But the only "activity" before the City is the modification of the building's façade. There is no fair argument that such an activity will have a significant effect on the environment or that modification of the building's exterior constitutes any unusual circumstances.

### III.

Venturans contend the City violated city and county requirements.

### (a)

Venturans argue the project is inconsistent with the general plan. The City found the project is consistent.

Venturans cite Action 7.21 of the Ventura General Plan, Policy 7D. Action 7.21 provides: "Require analysis of individual development projects in accordance with the most current version of the Ventura County Air Pollution Control District Air Quality Assessment Guidelines and, when significant impacts are identified, require implementation of air pollutant mitigation measures determined to be feasible at the time of project approval." But the only "development project[]"

7

before the City is WINCO's application to alter the exterior of the building and a sign variance. The City's conclusion that alterations to the exterior of the building and a sign variance complies with the air quality provisions of the general plan is supported by the record. There simply will be no "significant impact[]." (*Ibid.*)

(b)

Venturans contend the project conflicts with the county's air quality guidelines and the City's air quality ordinance.

Venturans' contention, like most of its other contentions, is based on the theory that the project includes use of the premises as a grocery store. It does not. The only project before the City is limited to alterations to the building's exterior.

(c)

Venturans contend the project violates conditions of approval.

The conditions of approval for Mervyn's Department Store allowed a maximum of 100 square feet of sign area. WINCO, however, has obtained a variance for 360 square feet of sign. Venturans argue that while a variance may allow a deviation from the municipal code, it does not change the conditions of approval. Venturans cite no authority for the proposition that a variance does not affect the conditions of approval. There appears no valid reason why it does not.

(d)

Venturans contend the grant of the sign variance is not supported by substantial evidence.

SBMC section 24.535.140 provides:

"In order for the design review committee to approve a sign variance, it must make all of the following findings:

"1. The proposed sign is in conformance with the purposes of chapter 24.420;[2]

_____

[2] SBMC chapter 24.420 regulates the use of all signs within the City.

8

"2.  The proposed sign will enhance the unique character and visual appearance of the city;

"3.  The proposed sign is an integral and well-designed portion of the overall building or site;

"4.  Strict compliance with the provisions of chapter 24.420 would be detrimental to the design of the sign, architectural characteristics of the building, or design of the site; and

"5.  The granting of a sign variance would not constitute the granting of a special privilege to the applicant, nor would it grant an undue advantage to the applicant."

Venturans argue the finding that granting of the sign variance would not constitute the granting of a special privilege or undue advantage to the applicant is not supported by substantial evidence.

But the opinions of planning staff constitute substantial evidence upon which the City may rely to support its findings.  (See *City of San Diego v. California Coastal Commission* (1981) 119 Cal.App.3d 228, 232.)  Here the DRC staff reported: "In staff's analysis, the proposed sign is significantly larger than allowed by the Zoning Regulations and the existing Mervyns sign (44 sq. ft.).  However, as the sign letter heights are consistent with other stores in other shopping centers in the vicinity and reflects Winco's standard corporate sign format, staff determined the sign is consistent in scale with the proposed changes to the façade and recommends the DRC approve the Sign Variance as submitted."  That is sufficient to support the DRC's finding.

Venturans cite *Orinda Association v. Board of Supervisors* (1986) 182 Cal.App.3d 1145, 1166, for the proposition that the DRC's finding of consistency with recently approved signs in the area must be supported by "'comparative data.'"  Venturans' reliance on *Orinda* is misplaced.

*Orinda* concerns a variance from a general zoning ordinance, not a sign variance.  In granting the variance, the county found that similar variances have been

9

granted on several occasions.  In discussing the lack of evidence to support such a finding the court noted that no specific examples are provided, and, in fact, the record indicates that every previous request for a variance had been denied.  (*Orinda Assn. v. Bd. of Supervisors*, *supra*, 182 Cal.App.3d at p. 1166, fn. 11.)  The court did not hold that such a finding must be supported by comparative data.

The judgment is affirmed.  Costs are awarded to respondents.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:



YEGAN, J.



PERREN, J.

10

Glen M. Reiser, Judge

Superior Court County of Ventura
_____

Johnson & Sedlack, Raymond W. Johnson, Abigail A. Broedling, Kimberly A. Foy for Plaintiff and Appellant.

Ariel Pierre Calonne, City Attorney; Jenkins & Hogin, Christi Hogin, Gregg Kovacevich for Defendant and Respondent.

Best Best & Krieger, Sarah E. Owsowitz, Stephanie R. Straka for Real Party in Interest.