Filed 12/7/16; pub. order 12/16/16 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SAN DIEGANS FOR OPEN GOVERNMENT et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF SAN DIEGO, <br><br> Defendant and Respondent; <br><br> SUNROAD ENTERPRISES et al., <br><br> Real Parties in Interest and Respondents. | D069922 <br><br><br> (Super. Ct. No. 37-2014-000146585-CU-TT-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge. Affirmed.

Briggs Law Corporation, Cory J. Briggs, Anthony N. Kim and Kelly E. Mourning for Plaintiffs and Appellants.

Jan L. Goldsmith, City Attorney, and Glenn T. Spitzer, Deputy City Attorney, for Defendant and Respondent.

Richards, Watson & Gershon, Steven H. Kaufmann and Ginetta L. Giovinco for Real Parties in Interest and Respondents.

This California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.)[1] case involves a development by Sunroad Enterprises and Sunroad Centrum Partners L.P. (together, Sunroad) of an office, residential, and retail project in the Kearny Mesa area of San Diego. Since 1997 the City of San Diego (the City) Council has approved the area for development under a master plan and over the ensuing years has thrice assessed the project for environmental impacts as required by CEQA. In 2012 Sunroad obtained a permit from the City to begin certain phases of residential development, including constructing several multilevel buildings over parking and ground level retail space.

By the next year, Sunroad modified its design plans, ostensibly to meet real estate market demands, and sought the City's approval of the modified plans through a process known as substantial conformance review (SCR). The City's staff found that the modified plans substantially conformed with the conditions and requirements of the previously issued development permit and there was no need for further environmental impact documentation under CEQA. San Diegans for Open Government and CREED-21 (together, plaintiffs) appealed the staff's decision to the City Planning Commission (Planning Commission), which is comprised of members appointed by the City Council. Following a public hearing, the Planning Commission voted to uphold the SCR decision.

---

1     Further statutory references are to the Public Resources Code unless stated otherwise.

The City denied plaintiffs' appeal to the City Council, which is comprised of elected officials.

Plaintiffs argue they are entitled to appeal the SCR decision to the City Council under CEQA and the San Diego Municipal Code (SDMC). We disagree and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*The City Council Assesses the Project's Environmental Impacts Under CEQA*

In 1997 the City Council approved a master plan (Master Plan) and related agreements and permits to allow the development of a high-density, mixed-use retail, commercial, and industrial business park on 242 acres centrally located in the Kearny Mesa area. As part of the review process for the Master Plan, the City Council certified a final, program environmental impact report (EIR). The EIR recites its preparation "in accordance with state CEQA Guidelines Section 15168"[2] and its intent "to provide a comprehensive single environmental document that will allow the City of San Diego, as the lead agency, to carry out the entire project." The EIR contemplates subsequent actions by the City to "implement specific development plans" without additional environmental documentation "unless as otherwise required by [section] 21166 and state CEQA Guidelines Section 15160 et seq."

_____

[2]    All references to CEQA Guidelines refer to title 14 of the California Code of Regulations.

In 2000 the City Council amended the original industrial/commercial development permit to include residential development—up to almost 1,000 dwelling units—on a portion of the site. The City adopted an addendum to the EIR (Addendum), which discussed the proposed residential development and concluded there were no new significant environmental impacts. In 2002 the City Council amended its progress guide and general plan to increase the maximum amount of residential development allowed in the Master Plan area to 1,568 units and adopted a mitigated negative declaration (MND), which found that, with mitigation measures described in the document, the additional residential units would not have a significant environmental effect.

*Sunroad Obtains Permission to Begin Residential Construction*

In May 2012 the City adopted a resolution allowing Sunroad to build several hundred of the residential units in the Master Plan area, remove a temporary parking lot, construct three buildings over several levels of parking, develop three recreation centers, and create ground floor retail space (the Project). The resolution notes the Project is subject to an environmental mitigation monitoring and reporting program (MMRP) and mitigation conditions contained in the EIR, Addendum, and MND. The City also issued the planned development permit (PDP) for the Project. The PDP contains dozens of conditions and requirements, including those relating to the environment, affordable housing, engineering, landscaping, parking, design features, parks, geology, and public utilities. The PDP states that any proposed changes in parking would require an "SCR process" and incorporates by reference the MMRP requirements of the EIR, Addendum, and MND.

*Substantial Conformance Review and Administrative Appeal*

In November 2013 Sunroad applied to the City for an SCR of proposed design changes to the approved Project. Principally citing changes in the real estate market, Sunroad's proposed modifications included the addition of a podium level pedestrian walkway/bridge to connect the deck and pool areas of two residential buildings, the elimination of one level of parking originally requested by a tenant who would no longer be leasing the adjacent office space, a reduction of bicycle spaces to the number required by the SDMC, and an increase in building height from 83 feet to 88 feet. Although the proposal included a change in the unit mix (e.g., less studios and more three-bedroom units), the total number of units and stories above ground would remain unchanged.

According to the City's publicly available information bulletin, the "goal of [SCR] is to determine if the proposed project is consistent and in conformance with a previously approved project." City staff from multiple departments (i.e., planning, transportation, landscaping, engineering) proceeded to evaluate Sunroad's proposed changes over several rounds of review. The staff also reviewed the Project revisions for conformance with existing environmental mitigation conditions. Further, reviewers noted the Kearny Mesa Community Planning Group's unanimous approval of the modifications. On January 30, 2014, the City's development services department issued a notice of decision approving the Project revisions (the SCR decision) and directing any appeals to the Planning Commission.

5

Plaintiffs timely appealed the SCR decision to the Planning Commission.[3] Plaintiffs disagreed the design changes were minor and argued the SCR process was not appropriate for the contemplated changes. In a report to the Planning Commission, City staff explained the parking to be removed would have no impact on the traffic circulation and the addition of the pedestrian bridge would potentially decrease pedestrian/vehicle conflicts at street level. Per the staff's calculations, the automobile spaces provided by the revised plans exceeded the minimum requirements under the SDMC. In addition, the staff showed the revised plans would still provide the required number of bicycle spaces under the SDMC and the Federal Aviation Administration issued a "no hazard" letter with respect to the slightly increased building height.

As part of its report to the Planning Commission, City staff also explained the revisions are subject to existing environmental impact mitigation measures. The staff concluded that the "revisions are minor in scope given the size of the development" and are "within the guidelines for the review of SCRs . . . ." The City's staff prepared a separate memorandum regarding the Project revisions under CEQA, concluding the Project was "consistent with the previously certified" EIR, Addendum, and MND, and the Project "would not result in new impacts or changed circumstances that would require a new environmental document." As a result, the "Development Services Department did not find the need to prepare a subsequent or supplemental environmental document . . . ."

_____

[3] Plaintiffs simultaneously attempted to appeal the SCR decision to the City Council, which was not processed. The City informed plaintiffs, "[T]here are no City appeals available for a determination that a project is within the scope of a previously-certified environmental document."

6

On April 10, 2014, the Planning Commission held a noticed public hearing at which plaintiffs presented their arguments. At the conclusion of the hearing, the Planning Commission voted to deny the appeal and uphold the SCR decision. Plaintiffs attempted to appeal the SCR decision to the City Council. In refusing to process the appeal, the City explained, "a determination that subsequent environmental review of a project is not required" is not appealable to the City Council. The City cited CEQA Guidelines section 15162 and SDMC section 113.0103.

*Superior Court Action*

Thereafter, plaintiffs filed a verified complaint for declaratory and injunctive relief and a petition for writ of mandate under CEQA in superior court. At trial, plaintiffs argued they were entitled to an administrative appeal to the City Council because (1) such an appeal was required under relevant statutes, and (2) the decision to approve the modified Project was discretionary. After considering the parties' briefs and oral arguments, the trial court denied plaintiffs' petition for writ of mandate and entered judgment in defendants' favor on the "single[] legal issue" of whether plaintiffs are entitled to an administrative appeal before the City Council. In reaching its decision, the court did not consider any evidence outside of the administrative record. This appeal followed.

DISCUSSION[4]

I. *LEGAL PRINCIPLES*

A. *Standard of Review*

We determine de novo whether an agency has complied with CEQA's legal requirements. (*Ebetts Pass Forest Watch v. California Dept. of Forestry & Fire Protection* (2008) 43 Cal.4th 936, 944; *San Diego Navy Broadway Complex Coalition v. City of San Diego* (2010) 185 Cal.App.4th 924, 932 (*San Diego Navy*).)

The CEQA Guidelines, which implement CEQA, are authorized by section 21083 and found in title 14 of the California Code of Regulations, section 15000 et seq. "In interpreting CEQA, we accord the Guidelines great weight except where they are clearly unauthorized or erroneous." (*Neighbors for Smart Rail v. Exposition Metro Line Construction Authority* (2013) 57 Cal.4th 439, 448, fn. 4.)

B. *CEQA and Stages of Review Generally*

In general, "CEQA compels government first to identify the environmental effects of projects, and then to mitigate those adverse effects through the imposition of feasible mitigation measures or through the selection of feasible alternatives. It permits government agencies to approve projects that have an environmentally deleterious effect, but also requires them to justify those choices in light of specific social or economic

---

[4] We deny plaintiffs' request for judicial notice filed on May 20, 2016, which attaches a legal memorandum and report from a different case. The documents attached to the request are not part of the administrative record in this case and are not relevant to resolving the legal questions presented on appeal. (Evid. Code, §§ 350, 452, subd. (c), 459; *Western States Petroleum Association v. Superior Court* (1995) 9 Cal.4th 559, 573, fn. 4; *RiverWatch v. Olivenhain Municipal Water Dist.* (2009) 170 Cal.App.4th 1186.)

8

conditions. (§ 21002.)" (*Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1233.)

CEQA establishes "a three-tier process to ensure that public agencies inform their decisions with environmental considerations. [Citation.] The first tier is jurisdictional, requiring that an agency conduct a preliminary review to determine whether an activity is subject to CEQA." (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 380 (*Muzzy Ranch*).) The second tier concerns exemptions from CEQA review, and the third tier applies if the agency determines an aspect of the project may cause a significant effect on the environment. (*Id.* at pp. 380-381.) If the third tier applies, "the agency must ensure that a full environmental impact report is prepared on the proposed project." (*Ibid.*)

"The Legislature has made clear that an EIR is 'an informational document' and that '[t]he purpose of an environmental impact report is to provide public agencies and the public in general with detailed information about the effect which a proposed project is likely to have on the environment; to list ways in which the significant effects of such a project might be minimized; and to indicate alternatives to such a project.' " (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 390-391, fn. omitted.)

"After an initial EIR is certified, CEQA establishes a presumption against additional environmental review. An agency has jurisdiction to prepare a subsequent or supplemental EIR only if the agency grants a 'discretionary' approval on the project ([CEQA] Guidelines, § 15162, subd. (c)), and certain statutorily enumerated new

9

circumstances occur (§ 21166; see [CEQA] Guidelines, §§ 15162, subd. (a), 15163)." (*San Diego Navy, supra,* 185 Cal.App.4th at p. 928, fn. omitted.)

"The rationale for limiting the circumstances under which a supplemental or subsequent EIR may be prepared is 'precisely because in-depth review has already occurred, the time for challenging the sufficiency of the original EIR has long since expired (§ 21167, subd. (c)), and the question is whether circumstances have *changed* enough to justify *repeating* a substantial portion of the process.' " (*Mani Brothers Real Estate Group v. City of Los Angeles* (2007) 153 Cal.App.4th 1385, 1398.)

## II. *PLAINTIFFS ARE NOT ENTITLED TO APPEAL THE SCR DECISION TO THE CITY COUNCIL*

The sole issue on appeal is whether plaintiffs are entitled to an administrative appeal of the SCR decision to the City Council. We conclude they are not.

### A. *Public Resources Code Section 21151, Subdivision (c) Does Not Apply*

Plaintiffs principally rely on section 21151, subdivision (c) to support their position. Subdivisions (a) and (b) of section 21151 require local agencies to prepare environmental impact reports on any project which may have a significant effect on the environment. Subdivision (c) of the same section provides as follows: "If a nonelected decisionmaking body of a local lead agency certifies an environmental impact report, approves a negative declaration or mitigated negative declaration, or determines that a project is not subject to this division, that certification, approval, or determination may be appealed to the agency's elected decisionmaking body, if any." (§ 21151, subd. (c).) In this case, the City was the local lead agency.

10

Assuming the City staff and/or the Planning Commission were nonelected decisionmaking bodies for purposes of section 21151, subdivision (c), we conclude neither the staff nor the Planning Commission took actions during the SCR process that would trigger an appeal to the City Council, the elected decisionmaking body. It is undisputed the staff and Planning Commission did not certify an environmental impact report or approve a negative declaration or mitigated negative declaration. (See §§ 21061 [environmental impact report], 21064 [negative declaration], 21064.5 [mitigated negative declaration].) Plaintiffs contend the SCR decision was a determination the Project "is not subject to [CEQA]." (§ 21151, subd. (c).) However, according to the CEQA Guidelines, a public agency determines an activity is not subject to CEQA during the preliminary review of an application for a permit or land use, prior to an initial study and EIR preparation. (CEQA Guidelines, § 15060; *Muzzy Ranch, supra,* 41 Cal.4th at pp. 380-381.) Furthermore, "[a]n activity is not subject to CEQA if: [¶] (1) The activity does not involve the exercise of discretionary powers by a public agency; [¶] (2) The activity will not result in a direct or reasonably foreseeable indirect physical change in the environment; or [¶] (3) The activity is not a project as defined in Section 15378." (CEQA Guidelines, § 15060, subds. (c)(1)-(3).)

Applying the CEQA Guidelines, neither the City staff nor the Planning Commission determined the Project is "not subject to CEQA" or otherwise exempt from CEQA. (CEQA Guidelines, §§ 15060, subds. (c)(1)-(3), 15061.) Indeed, the City Council already determined the entire development approved under the Master Plan *is* subject to CEQA and significantly affects the environment in certain respects. Based on

11

our review of the record, the SCR decision did nothing to alter the City Council's prior determinations and, rather, confirmed the Project remains subject to the mitigation measures contained in the EIR, Addendum, and MND. Section 21151, subdivision (c) does not apply under the circumstances.

To support their position, plaintiffs cite *San Diego Navy, supra,* 185 Cal.App.4th at pages 929-930, in which the City Council heard an appeal of a decision not to require further environmental review of a redevelopment project. However, the *San Diego Navy* court merely recited the undisputed procedural history and did not address the issue of whether the City Council was required to hear the appeal under section 21151. (*San Diego Navy,* at pp. 929-935.) Accordingly, *San Diego Navy* does not support that plaintiffs were entitled to a City Council appeal under section 21151, subdivision (c).

Plaintiffs separately argue they were entitled to an administrative appeal to the City Council because the SCR decision was discretionary and the Project requires further environmental review.[5] The City and Sunroad contend that plaintiffs' characterization of the decision as discretionary as opposed to ministerial does not establish a right to further environmental review.

We conclude the discretionary or ministerial nature of the SCR decision is tangential to whether plaintiffs are entitled to a City Council appeal. As discussed *ante*, neither the City staff nor the Planning Commission determined the Project was not

---

[5]     Plaintiffs' brief does not describe what kind of further environmental review is required; they assert merely that because the Project is "subject to CEQA review," they are entitled to a City Council appeal.

subject to CEQA.  The conclusion an activity is "discretionary" or subject to CEQA does not independently trigger a right to a City Council appeal or require the preparation of a subsequent environmental impact report—other conditions must be met.  (§§ 21151, subd. (c), 21166; *San Diego Navy, supra,* 185 Cal.App.4th at p. 928.)  Thus, plaintiffs have failed to establish they are entitled to appeal the SCR decision to the City Council under any provisions of CEQA.

        B.  *San Diego Municipal Code Section 112.0520 Does Not Apply*

Plaintiffs also point to SDMC section 112.0520, subdivision (a), to support their claimed right to administratively appeal the SCR decision to the City Council.  The SDMC provides that "any person may appeal an *environmental determination*" not made by the City Council to the City Council.  (SDMC, §§ 112.0520 (a) & (d).)  Environmental determination is defined as "a decision by any non-elected City decision maker, to certify an environmental impact report, adopt a negative declaration or mitigated negative declaration, or to determine that a project is exempt from the California Environmental Quality Act (CEQA), under State CEQA Guidelines Section 15061[, subdivision] (b)."  (SDMC, § 113.0103.)

For reasons we have discussed, the SCR decision by the City staff and upheld by the Planning Commission was not an "environmental determination" as defined in the SDMC.  The City found that Sunroad's modified design plans conformed to previously approved development permit conditions and requirements, including mitigation measures required under CEQA.  The City did not find the Project exempt from CEQA.

13

(See CEQA Guidelines, § 15061, subd. (b).)  Plaintiffs are not entitled to appeal the SCR decision to the City Council under the SDMC.

DISPOSITION

The judgment is affirmed.  The City and Sunroad shall recover their costs on appeal.


                                                                    NARES, J.

WE CONCUR:


McCONNELL, P.J.


HUFFMAN, J.

14

Filed 12/16/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGANS FOR OPEN GOVERNMENT et al., | D069922 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2014-000146585-CU-TT-CTL) |
| CITY OF SAN DIEGO, | |
| Defendant and Respondent; | ORDER CERTIFYING OPINION FOR PUBLICATION |
| SUNROAD ENTERPRISES et al., | |
| Real Parties in Interest and Respondents. | |

THE COURT:

The opinion in this case filed December 7, 2016, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to California Rules of Court, rule 8.1120(a) for publication is GRANTED.

15

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to:  All parties

16